UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA EX REL. LAWRENCE MCCARTHY, | )<br>)<br>) |
| Relator-Plaintiff, | ) |
| v. | )<br>) Case No. 11-cv-7071 |
| MARATHON TECHNOLOGIES, INC., SIGMATEK, INC. d/b/a MTI SIGMATEK, and JERRY KOZLOWSKI, | )<br>)<br>)<br>) |
| Defendant. | ) Judge Sharon Johnson Coleman<br>) |

## MEMORANDUM OPINION AND ORDER

Relator-plaintiff, Lawrence McCarthy ("relator"), filed a six-count complaint under the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.* on behalf of the United States of America against corporate defendants Marathon Technologies, Inc. ("Marathon") and Sigmatek, Inc. ("Sigmatek"), and the president and owner of Marathon and Sigmatek, Jerry Kozlowski. Relator claims that the defendants knowingly violated the terms of two contracts with the United States government and knowingly submitted false claims for payment. Defendants move to dismiss all counts for failure to state a claim pursuant to *Federal Rule of Civil Proocedure* 12(b)(6). For the reasons set forth herein, defendants' motion to dismiss [19] is granted in part and denied in part.

**Background**

The following factual allegations are accepted as true for purposes of ruling on the instant motion. Relator-plaintiff, Lawrence McCarthy, formerly worked as a Purchasing Manager for Marathon from February 14, 2005, until January 17, 2011. Defendant, Jerry Kozlowski owns and operates Marathon. In August 2006, McCarthy was advised he would also be the ISO9001 Administrator/Internal Auditor/Management Representative. In that role, he was responsible for the purchasing of "all components, raw materials, services and outside vendors" and ensuring

compliance with the quality assurance processes under standards set by the International Organization for Standardization ("ISO"). (Dkt. 1, Compl. at ¶ 15, n.2). After beginning his employment with Marathon, McCarthy learned that Sigmatek, a separate corporation, was run out of the same location as Marathon, and was also owned and operated by Kozlowski.

On September 2, 2004, Marathon contracted with the U.S. Army to manufacture MK93 Heavy Machine Gun Mounting Systems in exchange for $21.7 million. The finalized contract number is W52H09-09-D-305.

On January 14, 2008, Sigmatek won a contract with the U.S. army to produce and deliver M3 Tripod Mounts in exchange for $9,244,642. The finalized contract number is W52H09-08-D-0147. The U.S. government designated the contract as a 100% HUBZone set-aside contract, giving contracting preference to small businesses. (*Id.* at ¶¶ 127-28). In order to solicit a bid for the M3 Tripod contract, a company had to be HUBZone certified at the time of the solicitation closing on September 1, 2007. (*Id.* at ¶ 141). In order to be HUBZone certified a business must:

a) Be a small business by SBS standards;

b) Be owned and controlled at least 51% by a U.S. citizen;

c) Have its principal office (location with the greatest number of employees) located within a HUBZone; and

d) Have at least 35% of its employees residing within a HUBZone.(*Id.* at ¶ 128).

Sigmatek filed an application to become HUBZone certified on December 11, 2007. On December 19, 2007, Sigmatek received a letter from Cean Hartleben, Contracting Officer from the U.S. Department of the Army, Rock Island Arsenal, stating that as of the date of the letter Sigmatek had not been certified as HUBZone, and because solicitation for the M3 Tripod contract closed on September 1, 2007, the proposal from Sigmatek would not be considered. (*Id.* at ¶¶ 140-41). On December 27, 2007, Sigmatek received notice from the SBA that the company had become

HUBZone certified. (*Id.* at ¶ 142). That same day, Kozlowski instructed McCarthy to email Maria Vera, Contract Specialist from the U.S. Department of the Army, to reconsider the contract following Sigmatek's HUBZone certification. (*Id.* at ¶ 143). The next day Vera responded via email that the quote for the contract could not be considered because Sigmatek was not certified prior to the closing date. On January 14, 2008, Vera emailed Sigmatek that they had been awarded the contract for the M3 Tripod.

In each contract, the United States government included specifications regarding the parts and processes required for the manufacturing of the MK93 Gun Mounts and M3 Tripod, as well as the required testing to be performed on the products prior to delivery. Relator alleges that defendants knowingly produced MK93 Gun Mounts and M3 Tripods without complying with the contractual requirements of MIL-STD-1916. (*Id.* at 62).

Both contracts between the defendant companies involved the United States Government and required payment upon the delivery of the manufactured products. (*Id.* at ¶ 55). A DD Form 250 and a Certificate of Conformance accompanied each lot of delivered products. (*Id.* at ¶ 57). The Certificate of Conformance identifies the product, part number, revision, lot size, and configuration of the product and expressly represents compliance with the contract terms and requirements. (*Id.* at ¶¶ 57, 124). It states that the document is "made for the purpose of inducing payment and with the knowledge that the information and certification may be used as a basis for payment." (*Id.* at ¶ 57). Kozlowski signed each DD Form 250 and Certificate of Conformance.

Relator filed the six-count complaint at issue here on October 6, 2011. Count I alleges that all defendants "knowingly present[ed], or cause[d] to be presented, a false or fraudulent claim for payment or approval," under 31 U.S.C. § 3729(a)(1)(A) when it submitted false or fraudulent claims for payment to the United States Government. Count II alleges that all defendants knowingly made false statements that were material to the alleged false claims referenced in Count I in violation of 31

U.S.C. § 3729(a)(1)(B). Count III alleges a conspiracy to submit false claims by and between all defendants. Count IV alleges a false claim under 31 U.S.C. § 3729(a)(1)(A) against Sigmatek and Kozlowski for submitting claims for payment on a contract obtained through a fraudulent HUBZone certification. Count V alleges false statements material to the false claims alleged in Count IV. Finally, Count VI alleges a conspiracy between Sigmatek and Kozlowski to submit the false claims and statements alleged in Counts IV and V.

**Legal Standard**

When reviewing a defendant's Rule 12(b)(6) motion to dismiss, the Court accepts all well-pleaded factual allegations in the complaint as true and draws all reasonable inferences in the non-movant's favor. *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007). Detailed factual allegations are not required, but the plaintiff must allege facts that, when "accepted as true . . . state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the complaint's factual content allows the Court to draw a reasonable inference that the defendants are liable for the misconduct alleged. *Id.*

FCA claims are subject to the heightened pleading requirements of Rule 9(b). *United States ex rel. Gross v. Aids Research Alliance-Chi.*, 415 F.3d 601, 604 (7th Cir. 2005). Rule 9(b) requires the "who, what, when, where, and how: the first paragraph of any newspaper story," of the "circumstances constituting fraud." *Goldberg v. Rush Univ. Med. Ctr.*, 929 F. Supp. 2d 807, 815 (N.D. Ill. 2013) (quoting *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir. 1990)); *see also United States ex rel. Yannacopolous v. Gen. Dynamics*, 315 F. Supp. 2d 939, 946 (N.D. Ill. 2004) (News stories are "short and to the point.").

**Discussion**

Defendants move to dismiss the entire complaint, arguing that relator fails to plead the

existence of any false claim with particularity, fails to plead any underlying actions of fraud with particularity, fails to plead any false statement, fails to allege a cognizable conspiracy, and fails to plead that any false statement is material with respect to Counts IV-VI.

*1. Counts III and VI*

Relator concedes that Counts III and VI, alleging conspiracy must be dismissed. The complaint alleges that Kozlowski is the sole owner of both Marathon and Sigmatek. It is settled law that a corporation cannot conspire with its wholly-owned subsidiaries or employees. *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 771 (1984). Therefore, Kozlowski cannot conspire with either Marathon or Sigmatek. Accordingly, relator's conspiracy counts are dismissed and defendants' motion is granted with respect to Count III and VI.

*2. Counts I and II*

Count I of the Complaint alleges violations of Section 3729(a)(1)(A) of the FCA, claiming that Defendants "knowingly present[ed], or cause[d] to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A). Count II of the Complaint alleges violations of Section 3729(a)(1)(B), alleging that Defendants "knowingly ma[de], use[d], or cause[d] to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(B).

Defendants move to dismiss Count I, arguing that it is unclear what documents relator contends constitute a "claim." However, where an FCA claim is based upon an alleged false certification of compliance, the claim is actionable if the certification is a condition of the government payment. *Gross*, 415 F.3d at 605. Here, relator alleges that defendants were required to submit and sign Certificates of Conformance explicitly stating that they conformed to the contractual stipulations in order to deliver the manufactured goods and demand payments from the government. Relator further alleges that each lot delivered to the Government was accompanied by a Certificate of Compliance stating "this certificate is made for the purpose of inducing payment and

with the knowledge that the information and certification may be used as a basis for payment." (Dkt. 1, Compl. at ¶ 57). Therefore, the Certification would qualify as a claim under the FCA.

Defendants move to dismiss Count II, arguing that false statement violations require a "double falsehood," meaning a false claim and a false statement material to the claim, possibly made to get paid. Yet, 31 U.S.C. § 3729(a)(1) has no double falsehood requirement. "While § 3729(a)(2) contains a double-falsehood requirement, FCA liability under § 3729(a)(1) arises when a defendant "knowingly presents, or causes to be presented … a false or fraudulent claim". Thus, there is no double falsehood requirement under § 3729(a)(1): One will suffice." *United States ex rel. Franklin v. Parke-Davis*, 2003 U.S. Dist. LEXIS 15754, *3-4 (D. Mass. Aug. 22, 2003)(citing *Shaw v. AAA Eng'g & Drafting, Inc.*, 213 F.3d 519, 531 (10th Cir. 2000)(internal citations omitted). Here, relator brings Count II pursuant to Section 3729(a)(1).

The Court finds that relator adequately alleges facts that provide the "who, what, when, where and how" relating to the claims for payment.[1] In this Circuit, a plaintiff who provides a "general outline of the fraud scheme" sufficient to give notice to the defendants of their "purported role" in the fraud satisfies Rule 9(b). *Goldberg,* 929 F. Supp. 2d at 815 (citing *Midwest Grinding Co. v. Spitz,* 976 F.2d 1016, 1020 (7th Cir. 1992)). Relator alleges the "who" are Marathon and Sigmatek through their owner Defendant Kozlowski who prepared, signed, and submitted all Certificates of Compliance to the government with each lot of manufactured goods. Defendants contend that relator fails to identify who, aside from Kozlowski, was also involved in submitting the alleged claims, but this is not required because this information is in the "exclusive possession of the defendants." *Yannacopolous*, 315 F. Supp. 2d at 945; *Corley v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1051 (7th Cir. 1998)).

The "what" is alleged to be the actual Certificates of Conformance attached to each lot of

---

[1] There is no disagreement between the parties with respect to "where" the alleged fraud took place.

goods. Defendants argue that relator failed to meet the particularity requirements of Rule 9(b)(6) because a copy of a claim is not attached. Again, these specific documents would be in the exclusive possession of the defendants, and to require the relator to "predict the contents…prior to discovery would be absurd." *United States ex rel. Trombetta v. Emsco Billing Servs.*, 2002 U.S. Dist. LEXIS 28463, *15 (N.D. Ill. Dec. 5, 2002).

The "when" is represented by the relator to be ongoing between January 2006 to January 2011, with each shipment of a lot of manufactured goods. Relator also alleges the contracts between defendants and the government were entered into on September 2, 2004, and January 14, 2008, and provides the approximate dates he was instructed by defendants to purchase hardware in violation of the contract specifications. When a fraudulent scheme is alleged of this magnitude, "dates of the specific misrepresentations cannot be reasonably be required." *Trombetta*, 2002 U.S. Dist. LEXIS 28463 at *16; *United States ex rel. Lusby v. Rolls-Royce Corp*, 570 F.3d 849, 854 (7th Cir. 2009).

Finally, relator alleges with sufficient particularity the "how"; i.e., the manner in which the claims were false. Relator alleges that defendants failed to perform contractually required inspections and testing, failed to purchase parts and obtain assistance in manufacturing from approved vendors, purchased and used non-Mil-Spec hardware in the manufacturing of the goods, and knowingly certified that they complied with the contract specifications on each Certificate of Conformance. Thus, the relator has provided an outline of a fraudulent scheme, with timelines and specific examples sufficient to meet the requirements of Rule 9(b). *See United States ex rel. Upton*, 900 F. Supp. 2d 821, 828-33 (N.D. Ill. 2012).

Similarly, in *United States ex rel. Lusby v. Rolls-Royce Corp*, the relator alleged the requirements to make a payment request under defendant's government contract, that the defendant knowingly failed to meet the requirements, and inferences could be drawn that the defendant submitted at least one claim because the government would not have paid the defendant otherwise. 570 F.3d at 854.

The Seventh Circuit held that the FCA claim was sufficient even though it did not provide details or specific documents showing that the defendant had actually made a claim because pleading with particularity is not to say the claim has been proved. *Id.* at 855. Accordingly, this Court denies defendants' motion as to Counts I and II.

*3. Counts IV and V*

Relator brings Counts IV and V pursuant to the same sections of the FCA as Counts I and II, but allege that Sigmatek and Kozlowski falsely obtained HUBZone certification in order to successfully obtain a government contract set aside for HUBZone qualified companies. Defendants argue that because the government was aware of the "very basis for the falsity accusations" (*i.e.* that Sigmatek was not HUBZone certified) there can be no finding of an FCA violation. If this argument were to have merit, then "a contractor in cahoots with a government official would be insulated from a False Claim Act suit." *United States ex rel. Asch v. Teller, Levit, & Silvertrust, P.C.*, 2004 U.S. Dist. LEXIS 8220, *9 (N.D. Ill. May 7, 2004); *United States ex rel. Durcholz v. FKW Inc.*, 189 F.3d 542, 545 (7th Cir. 1999). Here, relator alleges that while the government had prior knowledge that certification came late, it had no prior knowledge that the certification was inappropriately granted. Defendants also argue that certification was not material to the government's decision to award the contract to Sigmatek. Even so, materiality is not relevant in FCA claims in the context of misrepresentations. *United States ex rel. Kennedy v. Aventis Pharms., Inc.*, 610 F. Supp. 2d 938, 944 (N.D. Ill. 2009) (citing *Luckey v. Baxter Healthcare Corp.*, 183 F.3d 730, 732-33 (7th Cir. 1999)).

Relator alleges that Defendants manipulated employment records, rented a building within a HUBZone to falsely represent it as its principal place of business, and represented it would comply with contract performance requirements in order to obtain HUBZone certification. The Seventh Circuit has adopted the promissory fraud theory, stating that where a person procures a contract by fraud, all claims under that contract are false for purpose of the FCA. *United States ex rel. Main v.*

*Oakland City Univ.*, 426 F.3d 914, 916 (7th Cir. 2005); *see also Bettis v. Odebrecht Contrs. of Cal., Inc.*, 393 F.3d 1321,1326 (D.C. Cir. 2005); *United States ex rel. Simpson v. Bayer Healthcare (In re Baycol Prods. Litig.)*, 732 F.3d 869, 876 (8th Cir. 2013). In *U.S. ex rel. Main*, the Seventh Circuit held that the FCA requires no more than "a causal…connection between fraud and payment." 426 F.3d at 916. Therefore, this Court finds the allegations have enough particularity to establish a causal link between the false statements and the false claims.

**Conclusion**

Based on the foregoing discussion, defendants' motion is granted as to Counts III and VI and denied as to the remainder of the Complaint. Counts III and VI are dismissed without prejudice.

IT IS SO ORDERED.

Date:   September 30, 2014                                   Entered:_____